**Ralph E. COBLENTZ, as Administrator, D.B.N. of the Estate of Edward Thomas Coblentz, Deceased, Appellant,**

v.

**AMERICAN SURETY COMPANY OF NEW YORK, Appellee.**

No. 25793.

United States Court of Appeals Fifth Circuit.

Sept. 5, 1969.

Rehearing Denied and Rehearing En Banc Denied Oct. 10, 1969.

---

**1060**

Larry S. Stewart, Frates, Fay, Floyd & Pearson, Miami, Fla., for appellant.

Robert G. Young, James E. Tribble, Blackwell, Walker & Gray, Miami, Fla., for appellee.

Before WISDOM, GODBOLD and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

This appeal is from a judgment notwithstanding the verdict entered by the trial court in favor of American Surety Company of New York in a garnishment action brought by Ralph E. Coblentz, the appellant here. The ultimate facts are for the most part undisputed.

During the early morning hours of December 27, 1959, Edward Thomas Coblentz, a college student, was loitering or prowling around a Miami, Florida, motel owned and managed by Vincent Carbone. After observing Coblentz for a short period of time, Carbone, armed with a pistol, went out and confronted him. A brief scuffle ensued and Coblenz fled. Carbone chased him, yelled for him to stop, and according to his testimony, fired several shots in an attempt to frighten him. One of the bullets apparently ricocheted and struck Coblentz, fatally wounding him.

In 1960 Ralph E. Coblentz, father of the deceased, filed actions against Carbone in the state circuit court in Dade County.[1] Carbone's insuror, American Surety Company of New York, defended the actions unsuccessfully and judgments totaling $70,000 were entered for the plaintiff. These judgments were subsequently reversed[2] and amended complaints were filed in June of 1962. American Surety filed answers to the amended complaints but subsequently concluded that it was not obligated to defend Carbone and withdrew from his defense.[3] Carbone retained other coun-

---

1. The actions were based on the Florida wrongful death and survival statutes, §§ 768.02 and 45.11, Florida Statutes, F.S.A.

2. Carbone v. Coblentz, Fla.App.1961, 132 So.2d 629.

3. Coverage under the policy did not extend to assault and battery committed by or at the direction of the insured. American Surety apparently concluded that Carbone had committed an assault and battery.

sel and in December, 1964, a waiver of jury trial was entered together with a stipulation of facts and testimony signed by counsel for both parties. On the basis of these stipulations, the circuit court entered judgments for Coblentz totaling $50,000.

Upon entry of the state court judgments, Coblentz procured the issuance of a writ of garnishment against American Surety. The garnishment action on grounds of diversity of citizenship, Title 28, U.S.C., Sec. 1332, was removed from the state court to the court below. The district court determined that until amended or set aside, the state court judgments (which found Carbone negligent) were binding in the garnishment action. Accordingly, summary judgment was granted for Coblentz. A panel of this Court reversed,[4] pointing out that "The finding of negligence was based upon a stipulation of testimony between parties—the representative of the deceased and the insured—both of whom would strongly prefer a finding of negligence rather than intentional tort". The case was remanded so that the negligence—assault and battery issue could be properly litigated. The jury resolved this issue by a general verdict in favor of Mr. Coblentz, which under their instructions constituted a finding that the death of young Coblentz was not the result of an assault and battery. On post trial motions, the district court set the verdict aside and entered judgment for American Surety. Appellant argues that the court erred in entering the judgment n. o. v. We agree, and reverse.

The trial court's charge to the jury with regard to assault and battery was as follows:

"An assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another person then present. That is an assault.

"A battery is the intentional, unlawful use of force or violence on the person of another or any unlawful beating, or other wrongful physical violence or constraint inflicted on a person without his consent. Unlawful in that sense means *unlawfully, civilly or criminally. It does not make any difference.*"

The trial court adapted this definition from O'Brien v. Howell, Fla.1957, 92 So.2d 608, 63 A.L.R.2d 544, adding the word "intentional" inasmuch as the *O'Brien* court indicated that "intentional" was implicit in the definition given in the charge in that case, op. cit., supra, at 610. The underscored language was objected to by appellant's counsel at trial but the objection is not raised on this appeal.

We must view appellant's objection to entry of the judgment n. o. v. in light of this Court's recent en banc decision in The Boeing Company v. Shipman, 5 Cir. 1969, 411 F.2d 365. There, in a diversity case, we held that:

"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the nonmover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better of

4. American Surety Co. of New York v. Coblentz, 5 Cir. 1967, 381 F.2d 185.

the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." 411 F.2d 374.

A perusal of the record convinces us that the entry of judgment n. o. v. violated *Boeing* standards. American Surety's defense to the garnishment action was that Carbone had committed an assault and battery, such conduct not being covered by the policy issued him.

Carbone testified that he fired the shots into the ground and that he did not intend to shoot Coblentz. He indicated that he only meant to scare the victim, not wound or kill him. Expert testimony supported the appellant's theory that the fatal bullet ricocheted and struck young Coblentz, rather than striking him directly. American Surety produced an eyewitness who testified that Carbone pursued Coblentz down a sidewalk and fired his pistol "at the man, to the side, high, low, just wildly". He also testified that Carbone threatened to kill Coblentz if he did not halt. Cross-examination revealed, however, that prior trial testimony given by this eyewitness did not include reference to any threats.

■ Given the Court's charge on assault and battery, the evidence presented at the trial was of such quality and weight that the jurors, in the exercise of impartial judgment, might reach varying conclusions as to the proper verdict. As there was a conflict in substantial evidence, a jury question was created and it was up to the jury as the traditional finder of facts to weigh the conflicting evidence and inferences and to determine the credibility of witnesses. Thus, the verdict of the jury should be reinstated.

Additionally, we find it necessary to comment briefly upon another issue raised by the appellant. By the terms of its policy, American Surety promised "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages * * *."

The district judge, in setting aside the jury verdict, stated that the final judgments entered by the state court were not within the coverage of the insurance policy because they did not legally obligate the insured to pay any sum or sums of money. This conclusion was apparently based upon the final paragraph of the state court judgments, which provided in pertinent part that:

"* * * [I]n accordance with stipulation of the parties, that this judgment may only be satisfied from public liability insurance policies in force at the time of the incident complained of and this judgment is not satisfiable from nor [may it] be a lien upon any other assets of the defendant, Vincent Carbone".

■■ In Florida, as elsewhere, the duty of an insuror to defend its insured is continuing in nature. The existence of the obligation to defend arises and must be determined by the claims alleged by the pleadings in the suit, and not upon the insuror's evaluation of ultimate liability vel non. St. Paul Fire and Marine Ins. Co. v. Hodor, Fla.Ct.App. 1967, 200 So.2d 205; Burton v. State Farm Mutual Auto Insurance Co., 5 Cir. 1964, 335 F.2d 317; Ketona Chemical Corp. v. Globe Indemnity Company, 5 Cir. 1968, 404 F.2d 181. Based upon the pleadings in the state court suit, it is clear that American Surety was obligated to undertake Carbone's defense. Where either an indemnitor or liability insuror has notice of a proceeding against his indemnitee or insured, and is afforded an opportunity to appear and defend, a judgment rendered against the indemnitee or insured, in the absence of fraud or collusion, is conclusive

against the indemnitor or insuror as to all material matters determined therein.[5]

Because American Surety refused to handle his defense, Carbone was left to his own resources. It was certainly in his best interest to consent to the entry of a judgment that could be satisfied only from public liability insurance policies covering him at the time of the incident rather than from his own personal assets. In this Erie situation, Florida law controls. We find no Florida cases in point but follow a clear line of authority well articulated by Nebraska courts. In Metcalf v. Hartford Accident and Indemnity Co., 1964, 176 Neb. 468, 126 N.W.2d 471, the Nebraska Supreme Court was confronted with the same issue that is before us: An insured, left to his own resources when his liability insuror refused to assume his defense, consented to entry of a judgment for $4500 and costs, satisfiable only out of insurance policies covering him. In the resulting garnishment action the insurance company contended, as does American Surety in this case, that since the judgment did not legally obligate its insured to pay anything neither did it—nor could it— obligate his insuror to pay anything. The Court replied to this contention with a quote from an Iowa case, Fullerton v. United States Casualty Co., 184 Iowa 219, 167 N.W. 700, 6 A.L.R. 367, earlier cited with approval by the Nebraska court in Hawkeye Casualty Co. v. Stoker, 154 Neb. 466, 48 N.W.2d 623:

> "We are cited to a clause of the contract to the effect that the right of the insured to maintain an action against the company is limited to cases of 'loss actually sustained and paid in money in satisfaction of a judgment after trial of the issue,' and it is said that the payment of Mrs. Jacobson by plaintiff was by way of a

settlement, and not in satisfaction of a judgment. But this provision can avail the appellant nothing in this case. It repudiated its obligation to assume and carry the defense to final judgment, and, having abandoned the case, it left the assured at liberty to take up the defense and contest the claim to final judgment, or, if so advised, to make the most favorable settlement possible." Metcalf op. cit. at 476.

The record shows that Carbone's lawyer advised American Surety that he intended to pursue the procedure approved by the Nebraska Court in Metcalf, unless American Surety should choose to fulfill its obligation to defend Carbone. Having elected to leave Carbone to his own defenses, American Surety could not later complain about the form of the judgment. "It is a well-settled principle that where a person is responsible over to another, either by operation of law or express contract, and he is duly notified of the pendency of the suit against the person to whom he is liable over, and full opportunity is afforded him to defend the action, the judgment, if obtained without fraud or collusion, will be conclusive against him, whether he appeared or not." 27 Am. Jur. Indemnity, § 35, p. 478. See also, 42 C.J.S. Indemnity § 32, p. 613; 50 C.J.S. Judgments § 811, p. 360.

The judgment on which this garnishment action is based was not tainted by fraud or collusion, and American Surety was given notice of the procedure that Carbone intended to pursue.

Upon remand we direct the district court to reinstate the verdict of the jury and enter final judgment thereon.

Reversed and remanded, with directions.

5. American Fire and Casualty Co. v. Blaine, Fla.App.1966, 183 So.2d 605; Westinghouse Electric Corp. v. J. C. Penney Company, Inc., Fla.App.1964, 166 So.2d 211; Wright v. Fidelity and Casualty Co. of New York, Fla.App.1962, 139 So.2d 913; Columbia Casualty Co. v. Hare, 1934, 116 Fla. 29, 156 So. 370.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.